Filed 11/20/25  P. v. Archie CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085919 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FSB20000165) |
| SEAN ARCHIE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Ronald M Christianson, Judge.  Reversed and remanded.

Robert V. Vallandigham, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

Jason Anderson, District Attorney, and Brent J. Schultze, Deputy District Attorney, for San Bernardino County District Attorney's Office as Amicus Curiae.

A jury convicted Sean Archie of voluntary manslaughter and related firearm offenses, and the trial court sentenced him to 16 years in prison. Archie asserts the judgment must be reversed because the trial court

deprived him of his statutory rights under Code of Civil Procedure section 231.7[1] when it failed to sustain defense counsel's objections to the prosecutor's use of peremptory challenges to two prospective jurors. The People concede error as to one of the prospective jurors and further concede that the conviction should be reversed and the matter remanded for a new trial.[2] We reverse the judgment and remand the matter for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Archie shot the victim, Cicero Mayfield, six times at close range in the roadway in front of a mutual friend's home. Mayfield was taken to the hospital but died two days later. Archie is a black male, and the victim, Mayfield, was also a black male. Both men were in their 50's in January 2020, when the shooting occurred.

The People charged Archie with one count of murder, and alleged that he personally and intentionally discharged a firearm, causing great bodily injury and death. In addition, the People charged Archie with one count of unlawful possession of a firearm by a felon. Archie pled not guilty.

At trial, defense counsel did not deny that Archie shot Mayfield. Rather, he asserted that the People had not met their burden to prove murder, and that there was at least an inference that Archie shot Mayfield in self-defense. The jury found Archie guilty of the lesser included offense of voluntary manslaughter and found true the allegation that he personally and intentionally discharged a firearm causing great bodily injury. They also

---

1    Further unspecified statutory references are to the Code of Civil Procedure.

2    The San Bernardino County District Attorney's office filed an amicus curiae brief, which we have considered, asserting the trial court did not error and that mandatory reversal under section 231.7 is unconstitutional.

2

found Archie guilty of possession of a firearm by a felon.  The trial court sentenced Archie to 16 years in prison.

## II.    DISCUSSION

Archie asserts the judgment must be reversed and the matter remanded for a new trial because the trial court violated his statutory rights under section 231.7 by failing to sustain his objections to the prosecutor's use of peremptory challenges against two prospective jurors.  The Attorney General concedes that the trial court should have sustained Archie's objection to the peremptory challenge as to one of the prospective jurors, and further concedes that, under the statute, the matter should be remanded for a new trial.

### A.    Section 231.7

Before turning to the details of the two peremptory challenges at issue in this case, we provide an overview of section 231.7, a provision of the Racial Justice Act (the RJA) that became effective on January 1, 2021.

At its core, section 231.7 precludes either party from using "a peremptory challenge to remove a prospective juror on the basis of the prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or the perceived membership of the prospective juror in any of those groups."  (§ 231.7, subd. (a).)

If a party attempts to use a peremptory challenge in a prohibited manner, the other party or the trial court "may object to the improper use of a peremptory challenge."  (§ 231.7, subd. (b).)  "[U]pon objection to the exercise of a peremptory challenge pursuant to this section, the party exercising the peremptory challenge shall state the reasons the peremptory challenge has been exercised."  (§ 231.7, subd. (c).)

3

Once the objection is made, the trial court "shall evaluate the reasons given to justify the peremptory challenge in light of the totality of the circumstances. The court shall consider only the reasons actually given and shall not speculate on, or assume the existence of, other possible justifications for the use of the peremptory challenge. If the court determines there is a substantial likelihood that an objectively reasonable person would view race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, as a factor in the use of the peremptory challenge, then the objection shall be sustained. The court need not find purposeful discrimination to sustain the objection. The court shall explain the reasons for its ruling on the record." (§ 231.7, subd. (d)(1).)

In making its determination, the trial court can consider, but is not limited to, several enumerated factors, including:

– Whether the defendant or the alleged victim "is a member of the same perceived cognizable group as the challenged juror.

– "Whether race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, bear on the facts of the case to be tried.

– "The number and types of questions posed to the prospective juror.

– "Whether other prospective jurors, who are not members of the same cognizable group as the challenged prospective juror, provided similar, but not necessarily identical, answers but were not the subject of a peremptory challenge by that party.

– "Whether a reason might be disproportionately associated with a race, ethnicity, gender, gender identity, sexual orientation, national origin, or

4

religious affiliation, or perceived membership in any of those groups.

– "Whether the reason given by the party exercising the peremptory challenge was contrary to or unsupported by the record.

– "Whether the counsel or counsel's office exercising the challenge has used peremptory challenges disproportionately against a given race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, in the present case or in past cases."  (§ 231.7, subd. (d)(3)(A)–(G).)

The statute acknowledges "that unconscious bias, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in the State of California."  (§ 231.7, subd. (d)(2)(A).)  It defines " 'unconscious bias' " to include both "implicit and institutional biases." (§ 231.7, subd. (d)(2)(C).)

Accordingly, the statute provides further that a "peremptory challenge for any of [certain enumerated] reasons is presumed to be invalid unless the party exercising the peremptory challenge can show by clear and convincing evidence that an objectively reasonable person would view the rationale as unrelated to a prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, and that the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case." (§ 231.7, subd. (e).)  The enumerated reasons include, among others:

"(1)    Expressing a distrust of or having a negative experience with law enforcement or the criminal legal system.

5

"(2)    Expressing a belief that law enforcement officers engage in racial profiling or that criminal laws have been enforced in a discriminatory manner.

"(3)    Having a close relationship with people who have been stopped, arrested, or convicted of a crime.

"(4)    A prospective juror's neighborhood.

"(5)    Having a child outside of marriage.

"(6)    Receiving state benefits.

"(7)    Not being a native English speaker.

"(8)    The ability to speak another language.

"(9)    Dress, attire, or personal appearance.

"(10)   Employment in a field that is disproportionately occupied by members listed in subdivision (a) or that serves a population disproportionately comprised of members of a group or groups listed in subdivision (a)." (§ 231.7, subd. (e)(1)–(10).)

"The term 'clear and convincing' refers to the degree of certainty the factfinder must have in determining whether the reasons given for the exercise of a peremptory challenge are unrelated to the prospective juror's cognizable group membership, bearing in mind conscious and unconscious bias.  To determine that a presumption of invalidity has been overcome, the factfinder shall determine that it is highly probable that the reasons given for the exercise of a peremptory challenge are unrelated to conscious or unconscious bias and are instead specific to the juror and bear on that juror's ability to be fair and impartial in the case."  (§ 231.7, subd. (f).)

In addition, the statute provides a list of "reasons for peremptory challenges [that] have historically been associated with improper discrimination."  (§ 231.7, subd. (g)(1).)  This includes the juror failing to

6

make eye contact or "exhibit[ing] either a lack of rapport or problematic attitude, body language, or demeanor." (§ 231.7, subd. (g)(1)(A), (B).)

Finally, the statute provides: "The denial of an objection made under this section shall be reviewed by the appellate court de novo, with the trial court's express factual findings reviewed for substantial evidence. The appellate court shall not impute to the trial court any findings, including findings of a prospective juror's demeanor, that the trial court did not expressly state on the record. The reviewing court shall consider only reasons actually given under subdivision (c) and shall not speculate as to or consider reasons that were not given to explain either the party's use of the peremptory challenge or the party's failure to challenge similarly situated jurors who are not members of the same cognizable group as the challenged juror, regardless of whether the moving party made a comparative analysis argument in the trial court. Should the appellate court determine that the objection was erroneously denied, *that error shall be deemed prejudicial, the judgment shall be reversed, and the case remanded for a new trial*." (§ 231.7, subd. (j), italics added.)

## B. Additional Background: Voir Dire

With the foregoing statutory framework in mind, we turn next to the two objections to peremptory challenges at issue in this case.

### 1. Prospective Juror No. 107, Seat No. 9

During voir dire, Prospective Juror No. 107 introduced himself as a civil engineer, with a wife and one child of school age. Addressing the questions posed to all the prospective jurors, he stated, "I do have two brothers that are in jail. Both were plea bargained. One was for theft for grand auto, and the other was for attempted murder. And the only type of

7

crimes that I've experienced have been theft of vehicle and house. Other than that, I feel I could be fair."

Upon further questioning, he said that he thought his brother that was in jail for theft was treated fairly. But when counsel asked the same question regarding the other brother, Prospective Juror No. 107 answered, "No. Not in that case because he was a minor and he ended up—he was 16, and his birthday wasn't for a couple months, and he got treated as an adult." The court asked, "So you felt that was unfair in terms of how they treated him more harshly because of his age?" Prospective Juror No. 107 replied, "Yes. And basically with the laws and everything, that has changed."

The trial court then asked, "Is there anything about what happened to either of your brothers that you think would cause you a problem being fair in this case?" Prospective Juror No. 107 answered, "No."

The prosecutor revisited the issue later, and asked Prospective Juror No. 107 if his brother that was incarcerated for attempted murder was prosecuted by "my office." Prospective Juror No. 107 responded, "I believe so," but also clarified that it was "25 years ago." Prospective Juror No. 107 confirmed that he was familiar with "what's happening with the law in regards to [his] brother's situation," and the prosecutor asked if he would be focused on the punishment or penalty in this case. Prospective Juror No. 107 responded, "No."

The prosecutor then asked, "You indicated that you didn't believe your brother was treated fairly basically because of his age—correct—and he was charged as an adult?" In response, Prospective Juror No. 107 explained, "Not just because of that. Like one of the other jurors said, when you are younger like 16, when you grow up with low means—we were a poor family. And when you are younger and [do] not [have] that much education, you rely on

8

the public defender and everybody else. I feel that the lack of knowledge or experience that you may have might work against you and you might say things that don't benefit you."

The prosecutor asked if Prospective Juror No. 107 was close with his brother when he was convicted. Prospective Juror No. 107 responded, "We are brothers." The prosecutor asked, "Do you think that, if you were picked as a juror in this case, you would be thinking about your brother's case?" Prospective Juror No. 107 responded, "No," and then explained further, "every situation is different. Everyone is an individual so it's dependent on looking at all the facts and everything in making a decision." The prosecutor asked Prospective Juror No. 107, "putting aside what happened with your brother, would you be able to follow the law as the judge instructs you?" He responded, "Yes."

The prosecutor used her first peremptory challenge against Prospective Juror No. 107, and defense counsel raised an objection under section 231.7. The trial court conducted a hearing outside the presence of the jury, and began by asking the prosecutor to state her reasons for the challenge.

The prosecutor explained:

> "He indicated that he felt his brother was treated unfairly in light of the new laws, he said that he was a minor at the time and was charged as an adult. He still—his brother is still in custody. He says he's still close to his brother.

> "And I believe that he has an axe to grind. He could have an ulterior motive, and he could end up nullifying this jury. This peremptory is not based on a particular class. Also, I did note that since he walked in he did look at me at least six times from entering the courtroom . . . as defense was inquiring as to the two remaining jurors."

Defense counsel pointed out that Prospective Juror No. 107 was Hispanic and asserted the reasons given were presumptively invalid under

9

section 231.7.  He first pointed to section 231.7 subdivision (e)(1), "Expressing a distrust of or having a negative experience with law enforcement or the criminal legal system," and subdivision (e)(3), "Having a close relationship with people who have been stopped, arrested, or convicted of a crime."  In addition, he pointed to section 23.17 subdivision (g)(1)(A), regarding prospective jurors being "inattentive, or staring or failing to make eye contact," and subdivision (g)(1)(B) regarding a prospective juror exhibiting "a lack of rapport or problematic attitude, body language, or demeanor."

Defense counsel asserted that, based on these presumptively invalid reasons, the burden shifted back to the prosecutor "to establish by clear and convincing evidence that there was a reason other than that," and that the prosecutor had not met that burden.  Finally, defense counsel noted that:

> "[Prospective] Juror [No. 107] talked about his background, coming from a poor community and things of that nature.  This juror was asked multiple times if he can be fair.  Each time he said he can be fair.  Each time he said he could separate his brother's case from this case.  The People asked him numerous times.  Not once did this juror say he would have any trouble being fair in this particular case."

The prosecutor pointed out that half of the jurors on the current panel were Hispanic.  She reiterated that the challenge was based "on his relationship with his brother."

The trial court ruled as follows:

> "I find under [subdivision] (e) by clear and convincing evidence that the Court does not find that the peremptory challenge is related to the juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation or perceived membership in any of those groups.  The reasons articulated, although they are in a laundry list, they may be suspect and presumed invalid.

10

"I believe the People have overcome by clear and convincing evidence that this is not a racially based peremptory challenge, and so the challenge by the defense in exercising it is denied."

### 2. Prospective Juror No. 18, Seat No. 3

Prospective Juror No. 18 was a Hispanic female. She was married, with three school aged children, and had worked for the Los Angeles County Department of Social Services for the last 17 years. During voir dire, she discussed her exposure to crime growing up and that she worked with both victims and criminals in her career. She explained that she would try to be fair, but also that she was self-aware of how her experiences shaped her views.

The prosecutor exercised a peremptory challenge, and defense counsel objected under section 231.7. The prosecutor explained her reasons for the challenge as follows:

> "[Prospective Juror No. 18] indicate[d] that she could be desensitized to crime after having grown up in the area with high crime. She made a comment that being human people—I feel like that's an excuse as to maybe why actions—someone's actions may be committed. [¶] This is not race-based. We still have Hispanics on the panel. . . . Also, I couldn't really understand her explanation as to why she could be fair."

Defense counsel argued that section 231.7, subdivisions (e)(3), (4), (10), and (g)(1)(C) were implicated.

The trial court ruled as follows:

> "Going back to the language in the statute in 231.7(e), based on my observations and [the prosecutor's] comments, the factors that [defense counsel] indicated are presumptive pursuant to the code, but in the Court's opinion and, I'm going to say, by clear and convincing evidence this peremptory is not being used with the rationales as it's

11

related to race, ethnicity, national origin or any of the other factors—or I should say designations listed in the code. So I'm going to deny the challenge based on that."

### C. The Trial Court Should Have Sustained the Objection to the Peremptory Challenge as to Prospective Juror No. 107

Archie asserts the trial court did not follow the proper procedures when he objected to the peremptory challenges under section 231.7. He contends the trial court made a generalized ruling but did not address his specific claims that the reasons the prosecutor relied on were presumptively invalid and did not make specific findings as to counsel's assertions regarding Prospective Juror No. 107's demeanor, as required by section 231.7, subd. (g)(2). The Attorney General agrees that the trial court erred as to Prospective Juror No. 107, "because the peremptory challenge was based on a presumptively invalid reason and the presumption of invalidity was not sufficiently rebutted."

As the Attorney General explains, section 231.7 lists both "[e]xpressing a distrust of or having a negative experience with law enforcement or the criminal legal system" and "[h]aving a close relationship with people who have been stopped, arrested, or convicted of a crime" as presumptively invalid reasons for exercising a peremptory strike against a prospective juror. (§ 231.7, subd. (e)(1), (3).) Although the prosecutor stated Prospective Juror No. 107 had "an axe to grind" and "could end up nullifying this jury," she did not provide any basis for that position other than his relationship with his brother. To the contrary, Prospective Juror No. 107 expressly stated he could be fair and that he would follow the law, despite his brother's case.

As the trial court seems to have acknowledged, the prosecutor's stated explanation for the strike included at least two presumptively invalid reasons: that Prospective Juror No. 107 had a close relationship with

12

someone that had been convicted of a crime and that Prospective Juror No. 107 felt his brother had been treated unfairly (i.e., had a negative experience with the criminal legal system). Accordingly, defense counsel's objection should have been sustained unless the prosecutor was able to show, by clear and convincing evidence, that an objectively reasonable person would view the rationale as unrelated to Prospective Juror No. 107's membership in a cognizable group (i.e., Hispanic minority), bearing in mind both conscious and unconscious bias, and instead bore on his ability to be fair and impartial in the case. (§ 231.7, subds. (e), (f).)

In *People v. Jaime* (2023) 91 Cal.App.5th 941 (*Jaime*), the prosecutor originally argued a peremptory challenge under the prior *Batson/Wheeler*[3] framework but subsequently acknowledged that the law had changed. (*Jaime,* at p. 945.) Although the prosecutor had relied on a presumptively invalid basis—the prospective juror having had a prior negative experience with law enforcement—the prosecutor did not make any further showing as to why the challenge was based on an objectively neutral reason. (*Ibid.*) "The court concluded as follows: 'I find based on everything that I saw and heard that the challenge was not based on an impermissible purpose, that it was a valid constitutional peremptory challenge.' " (*Ibid.*)

On appeal, the People asserted Jaime had forfeited any argument under section 231.7, but the appellate court concluded an objection would have been futile. (*Jaime*, *supra,* 91 Cal.App.5th at p. 946.) Because there was no dispute that the prosecutor provided no evidence to rebut the presumptively invalid reasons for exercising the peremptory challenge, the

---

3    See *Batson v. Kentucky* (1986) 476 U.S. 79; *People v. Wheeler* (1978) 22 Cal.3d 258.)

court reversed the judgment and remanded the case for a new trial. (*Id.* at p. 947.) Likewise, here, the prosecutor did not offer any further explanation or point to any other answers that indicated the juror could not be fair because of his relationship with his brother or his belief that his brother was treated unfairly.

Moreover, the prosecutor made comments about Prospective Juror No. 107's demeanor, and that he had looked at the prosecutor several times that day. The trial court did not make any finding as to whether that assertion was accurate, and the prosecutor offered no explanation as to why the behavior was relevant to the case, as required by section 231.7, subd. (g)(2). (See *People v. Caparrotta* (2024) 103 Cal.App.5th 874, 892 ["the role of the two-step procedure set forth in section 231.7, subdivision (g)(2) is to determine whether the presumption of invalidity has been rebutted"].)

The People suggest Archie forfeited this second argument, but defense counsel pointed out section 231.7, subd. (g) in making his objection to the peremptory challenge. The trial court made an oral ruling on the objection, but failed to specifically address section 231.7, subd. (g). We decline to conclude that defense counsel had to do more to preserve the objection given the exchange that occurred here.

The San Bernardino County District Attorney's Office, the entity that originally prosecuted Archie, filed an amicus curiae brief, in which they assert both that the trial court did not err in overruling the objection to the peremptory challenge for Prospective Juror No. 107, and that the Legislature cannot mandate reversal by means of its enactment of section 231.7, because

14

article VI, section 13 of the California Constitution[4] prohibits such a remedy in the absence of a finding that trial court procedural error resulted in a miscarriage of justice.

As to the first issue, the district attorney asserts the peremptory challenge was not based on ethnicity, but, as we have explained, even the trial court seems to have acknowledged that it was based on a presumptively invalid reason. Close relationships with convicted persons and prior negative experiences with or distrust of law enforcement are presumptively invalid reasons for a peremptory challenge precisely because the RJA acknowledges the existence of overt and implicit bias in, for example, charging decisions. (See, e.g., *McDaniel v. Superior Court* (2025) 111 Cal.App.5th 228, 243 [discussing racial disparities in charging decisions].) For the reasons we have explained, we agree with the Attorney General that the prosecutor did not make an adequate record to overcome the presumption of invalidity in this case.

The second issue regarding the Legislature's ability to require reversal was not raised by either party, either before the trial court or in this appeal. Amicus curiae must accept the issues made and propositions urged by the appealing parties, and any additional questions presented in a brief filed by an amicus curie will not be considered. (*People v. Hannon* (2016) 5 Cal.App.5th 94, 105.) Even if we were to consider the district attorney's

---

4	California Constitution article VI, section 13 provides: "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.

argument, we are not persuaded that the California Constitution precludes the Legislature from defining specific reasons that give rise to a presumption of racial discrimination in jury selection, or from codifying the recognized principle that discrimination in jury selection is a type of per se reversible structural error. (See, e.g., *People v. Aranda* (2012) 55 Cal.4th 342, 364 [our "high court has identified as structural error constitutional violations such as . . . racial discrimination in jury selection"].) By its terms, article VI, section 13 of the California Constitution applies to "misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure," not to structural error. (See, e.g., *People v. Cahill* (1993) 5 Cal.4th 478 [certain structural errors require reversal notwithstanding the strength of evidence in a particular case].)

In sum, we conclude that the trial court failed to follow the procedure set forth in section 231.7 with respect to Prospective Juror No. 107 for at least two reasons. First, the prosecutor's explanation of the challenge relied primarily on presumptively invalid reasons under section 231.7, subdivision (e)(1) and (3) and the prosecutor did not offer any evidence, such as additional statements by the prospective juror, to overcome that presumption. The trial court likewise stated, summarily, that the prosecutor had overcome the presumption by clear and convincing evidence, but did not offer any explanation or evidence to support that finding. Second, the prosecutor also relied on presumptively invalid demeanor or behavior, and the trial court failed to make the requisite finding under section 231.7, subd. (g)(2) as to whether the asserted behavior occurred, and therefore whether that reason was also presumptively invalid. As a result, the matter must be reversed and remanded for a new trial.

As a final matter, the Attorney General asserts there was no error as to Prospective Juror No. 18, because there was clear and convincing evidence that that peremptory challenge was based on the prospective juror's ability to be fair and impartial in this case. We note that the trial court offered similarly cursory findings as to Prospective Juror No. 18, without any explanation as to the clear and convincing evidence it relied upon, and without specifically addressing the objection under section 231.7, subdivision (g). At the same time, the prosecutor's original explanation was more detailed in terms of pointing to statements the prospective juror made specifically about her ability to be fair. Because we conclude remand is necessary based on the trial court's handling of the objection to the peremptory challenge to Prospective Juror No. 107, we need not, and expressly do not, resolve the remaining conflict as to Prospective Juror No. 18.

## III.  DISPOSITION

The judgment is reversed. The case is remanded for a new trial.

KELETY, J.

WE CONCUR:

McCONNELL, P. J.

BUCHANAN, J.

17